## FARMERS & MERCHANTS STATE BANK OF MORGAN v. FIDELITY & DEPOSIT COMPANY OF MARYLAND.[1]

May 29, 1925.

No. 24,410.

**Defenses in action on fidelity bond properly submitted to jury.**

1. In an action on a bond guaranteeing the fidelity of an officer of the plaintiff, in which the evidence was sufficient to sustain a finding of misappropriation within the terms of the bond, which on this appeal it is to be assumed the jury found, the defenses provided in the bond, some one or more of which were found for the defendant by its general verdict, were submitted under proper instructions, and upon sufficient evidence, and involved the following questions:

[1]Reported in 204 N. W. 33.

(a) Whether the plaintiff upon becoming aware of the misappropriation by its officer immediately notified defendant; immediately being construed to mean a reasonable time.

(b) Whether it filed an itemized and verified proof within 90 days after becoming aware of such misappropriation.

(c) Whether it brought suit within 12 months after becoming aware of such misappropriation.

(d) Whether plaintiff failed to make the required inspection of the accounts of its officer and the securities in his custody, and was guilty of bad faith.

(e) Whether the plaintiff was guilty of bad faith in making certificates as to its officer's conduct for the purpose of obtaining continuations of the bond.

**New trial properly denied.**

2. There was no abuse of discretion in denying a new trial upon the ground of newly discovered evidence, the claim of the plaintiff being that an officer of the bank was a subagent of the defendant and therefore the defendant was charged with such knowledge as its subagent had as to the doings of the misappropriating officer.

1. See Fidelity Insurance, 25 C. J. p. 1101, § 12; p. 1115, §§ 29, 30; p. 1116, §§ 30, 31.

2. See New Trial, 29 Cyc. p. 1009.

Action in the district court for Redwood county. The case was tried before Olsen, J., and a jury which returned a verdict in favor of defendant. Plaintiff appealed from an order denying its motion for a new trial. Affirmed.

*Cobb, Wheelwright, Hoke & Benson* and *Albert D. Flor*, for appellant.
*Daniel F. Foley*, for respondent.

DIBELL, J.

Action on a bond given to guarantee the fidelity of one Jackson, at first the cashier and later the president of the plaintiff bank. There was a verdict for the defendant and the plaintiff appeals from the order denying its motion for a new trial.

1. In 1914 the defendant executed a bond agreeing to "reimburse the employer [plaintiff] to the extent of the sum of Ten Thousand ($10,000) Dollars, and no further, for such pecuniary loss of moneys,

securities or other personal property belonging to the employer, as the employer shall have sustained by any dishonest act or acts committed by the employe [Jackson] in the performance of the duties of the office or position in the service of the employer hereinbefore referred to or of such other office or position as the employe may be subsequently appointed to or called upon to fill by the employer."

The bond contained a provision for its continuation from year to year and it was continued to and including 1922. Prior to each continuation the bank signed a certificate in substantially the following language:

"To Fidelity and Deposit Company of Maryland: This is to certify that to the best of my knowledge and belief, since the issue of the above bond Mr. J. C. Jackson has faithfully, honestly and punctually accounted to me for all moneys and property in his control or custody, as my employe, has always had proper securities and funds on hand to balance his accounts, and is not now in default to me."

One condition of the bond was:

"That the employer on becoming aware of any act which may be made the basis of any claim hereunder, shall immediately give the company notice thereof in writing, by a registered letter."

Another was that the bank should file with the company its itemized and verified claim within 90 days after becoming aware of such act; and that suit should be brought within 12 calendar months after it became aware thereof.

Another condition or provision was that the bank should make a complete inspection of the accounts and books of its employe at least once in every 12 months from the date of the bond, such inspection to include the examination of all cash and securities of which he had custody or charge.

The evidence supports the plaintiff's claim that in 1922 and prior years Jackson misappropriated the funds of the bank in large amounts by taking to his own use moneys coming to the bank in payment of mortgage loans and continuing to carry them on the books of the bank as live assets. If the jury so found, and for the purposes of this appeal it must be assumed that it did, the plaintiff

should recover unless one or more of the defenses available under the terms of the bond were submitted to the jury under proper instructions, and upon sufficient evidence, and found adversely to the plaintiff. It is conceded that in 1922 and for a long time prior Jackson habitually overdrew his account at the bank. The making of a check with intent to defraud, knowing that the maker has not sufficient funds in or credit with the bank to pay it is made an offense; and the making of such is prima facie evidence of an intent to defraud. G. S. 1923, § 10361.

On November 20, 1922, the bank was aware of misappropriations by Jackson, who on that day resigned. It had suspicion before, and perhaps notice suggesting an inquiry which would have led to a disclosure. It is not disputed that it knew all along for years that Jackson overdrew his account. It was a matter of concern. There was an effort to remedy the situation. It may be inferred that the bank was much a one man institution, and Jackson the man, that the bank directorate exercised little oversight or control, and that the president did as he wished with the affairs of the bank.

After charging in detail upon the issues the court summarized the conditions under which the plaintiff could recover:

"If you find, under the rules given you in the charge, that J. C. Jackson, in his employ as cashier and president of the plaintiff bank, during the time from 1915 until November 20th, 1922, was guilty of dishonest acts whereby he appropriated to his own use money of this bank and defrauded the bank of money; and you further find that none of the other officers or directors of the bank became aware of such dishonest acts until about November 20th, 1922; and you further find that plaintiff then immediately notified defendant of such dishonest act or acts on the part of Jackson, and that the plaintiff did within ninety days after it became aware of any such dishonest act on the part of J. C. Jackson, file an itemized and verified proof of its claim with defendant, as required by its bond; and that this action was commenced within twelve months after any other officer or director of plaintiff bank first became aware of any dishonest act of Jackson under which a claim could be made; and you further find that plaintiff's officers and directors,

other than Jackson, were not guilty of any bad faith or fraud as to the defendant in the matter of annual inspection and examination of the accounts and books and moneys and securities of the bank in the custody of Jackson; and if you further find that there was no bad faith or fraud to the defendant in the matter of the certificates made by the officers of the bank for the purpose of obtaining continuations or renewals of this bond; if you find as I have stated, then you will find in plaintiff's favor in this case."

Then it summarized the conditions under which the plaintiff could not recover:

"On the other hand, if you do not so find, if you do not find that there were any dishonest acts on the part of Jackson which resulted in any loss to plaintiff; or if you find that notice to the defendant was not given immediately upon the discovery of dishonest acts of Jackson first coming to the knowledge of one or more of plaintiff's officers or directors, as required by this bond; or if you find that no itemized proof of claim was filed with the defendant within ninety days after the bank or some of its officers or directors, other than Jackson, first became aware of the dishonest act of Jackson giving rise to claims under the bond; or if you find that this action was not commenced within twelve months after some officer or director of the bank first became aware of the dishonest acts of Jackson; or if you find that the plaintiff failed to make proper annual inspection in examination of its books, accounts, securities and funds, and that it was so negligent in that respect that it amounted to bad faith or fraud as to this defendant; or if you find that the plaintiff or the officers or directors of the plaintiff who executed the certificate to obtain the continuations or renewals of this bond knowingly made therein false statements of one or more material facts which were relied upon by defendant in continuing the bond, so as to constitute a fraud as I have stated; then, in either such case you will find a verdict in defendant's favor."

The court charged, in addition, that immediate notice meant notice within a reasonable time and its charge was correct. Pearson v. U. S. F. & G. Co. 138 Minn. 240, 164 N. W. 919; George A. Hormel &

Co. v. American Bonding Co. 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. ed. 1193.

It charged, relative to the overdrafts, that if Jackson drew checks without having funds or credit in the bank to meet them, with intent to defraud, or thereby used the money of the bank for himself without authority and unlawfully, to the knowledge of the bank, that was such misconduct as would require notice to the defendant, and such misconduct as would make it a fraud upon the defendant thereafter to furnish a certificate, of the form before noted, as a basis for the continuation of the bond.

Whether an itemized statement was furnished the defendant within 90 days, and suit brought within 12 months, as required by the bond, depends upon when the jury found that the bank became aware of Jackson's misdoings. It may have found that it was aware of his appropriations to his own use of payments coming to the bank on mortgages or at least that it had sufficient notice, more than 90 days before furnishing the itemized statement, and more than 12 months before suit; and concededly it knew of his overdrafts long before. The issues on all these questions were for the jury.

There was no exception taken by the plaintiff to the charge. There was no objection to the submission of the issues as they were submitted. We do not find error. It may be noted that the delay from November 20, 1922, to December 14, 1922, in giving the notice was very long. The plaintiff was given the benefit of having the question of its effect left to the jury. It surely cannot complain of an adverse finding. The evidence upon the other issues found against the plaintiff was less favorable to it; but it was such as to sustain the jury's findings.

2. The motion for a new trial for newly discovered evidence is based upon the claim that the defendant's subagent who procured the bond was an officer of the bank, having knowledge of Jackson's misdoings, and that he is to be treated as a soliciting agent and the defendant charged with his knowledge. It is enough to say that whether a new trial should have been granted was within the sound discretion of the trial court and it was fairly exercised.

Order affirmed.